RD 2/20 J.H.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
JARITZA DE LA ROSA,

                    *Plaintiff*,

                                        **MEMORANDUM AND ORDER**

          v.
                                        17-cv-04693(KAM)

COMMISSIONER OF SOCIAL SECURITY,

                    *Defendant*.
--------------------------------X
**MATSUMOTO, United States District Judge:**

          Jaritza De La Rosa ("plaintiff") appeals the final
decision of the Commissioner of Social Security ("defendant"),
which found that plaintiff was not eligible for supplemental
security income benefits under Title XVI of the Social Security
Act ("the Act"), on the basis that plaintiff is not disabled
within the meaning of the Act.  Plaintiff alleges that she is
disabled under the Act and is thus entitled to receive the
aforemention ed benefits.

          Presently before the court is defendant's motion for
judgment on the pleadings (ECF No. 15.) and plaintiff's cross-
motion for judgment on the pleadings. (ECF. No 17.)  For the
reasons stated below, plaintiff's motion is GRANTED in part,
Defendant's motion is DENIED, and the case is remanded for
further proceedings consistent with this Memorandum and Order.

I.  **BACKGROUND**

a. **Procedural History**

On January 17, 2014, plaintiff Jaritza De La Rosa filed an application for supplemental security income benefits. (ECF No. 1, Complaint ("Compl."), at 1; ECF No. 21, Administrative Transcript ("Tr."), at 269, 327-335, 342, 346.) The alleged onset of her disability was January 2, 2008 and the plaintiff claimed that she was disabled as a result of depression, mood swings and uncontrolled anger. (Tr. 269.)

On June 4, 2014, the SSA denied the plaintiff's application for supplemental security income on the grounds that she was not disabled within the meaning of the Act. (Tr. 277-282.) On July 11, 2014 the plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 283-285.) On May 20, 2016, plaintiff appeared with her non-attorney representative and a Spanish language interpreter and testified before ALJ Mark Solomon. (Tr. 248-267.) Also appearing were vocational expert Miriam Greene and the plaintiff's mother, Maribel De La Rosa. (*Id.*) By a decision dated July 15, 2016, the ALJ determined that plaintiff was not disabled within the meaning of the Act and was thereby not entitled to benefits. (Tr. 16-32.)

On September 16, 2016, plaintiff appealed the ALJ's decision to the Appeals Council. (Tr. 323.) On July 6, 2017 the Appeals Council denied review of the decision, thereby

2

rendering the ALJ decision the final decision in the case. (Tr. 1-6.)  On August 10, 2017, plaintiff filed the instant action in federal court. (*See generally* Compl.)

### b. Medical and Non-Medical Evidence

The parties filed a Joint Stipulation of Relevant Facts on July 2, 2018.  (ERE No. 16-1.)  By reference the court incorporates those facts herein.  Because the court has incorporated the facts stipulated to by the parties, the court will address only the medical opinion evidence as well as those facts relevant to the decision.

At the time that the plaintiff filed her claim she filed a Disability Report - Adult.  (Tr. 345-352.)  The report gave the names and addresses for the following treatment sources: Maria Almonte, MD of The La Providencia Family Health Clinic; and New York Psychotherapy and Counseling Center (hereinafter, "NYPCC").  (*Id.*)  On May 12, 2016, eight days before her hearing, the plaintiff filed a "Recent Medical Treatment" form in which she identified recent medical treatment with Dr. Horacio Preval of NYPCC.  (Tr. 388.)

At the time of the hearing the plaintiff's non-attorney representative from legal services requested that the ALJ leave the record open for two weeks to obtain the outstanding records from Dr. Preval and NYPCC, and advised that the records had been requested but not yet received.  (Tr. 251-

3

252.) The ALJ agreed to keep the record open and noted that the record was "sparse". (Tr. 251.) On June 3, 2016, the plaintiff's representative requested an extension of time, stating that the request for the records had not yet been processed by NYPCC. (Tr. 400.) On July 5, 2016, the plaintiff's representative requested that the ALJ subpoena the records, stating that the records had not been received from NYPCC despite the fact that other record requests made in the same time period had been fulfilled. (Tr. 401.) The ALJ did not subpoena the records, and issued a decision denying the plaintiff's claim. (Tr. 16-32.) The ALJ stated in his decision, *inter alia*, that he had denied the request for subpoena and stated the representative had "ample opportunity to obtain the records" and that "additionally, the request is untimely, as such requests must be made within 5 days prior to the hearing". (Tr. 23.) In his decision the ALJ gave partial weight to the opinion of Dr. Preval because "he only treated the claimant for four months, the claimant's mental status examination was normal, and he based his opinion on the claimant's self-reported symptoms". (Tr. 26.)

On November 1, 2016, the plaintiff's representative obtained and submitted 201 pages of medical records from NYPCC to the Appeals Council. (Tr. 33-234.) The Appeals Council

4

issued a decision finding that the medical records would not
have altered the outcome of the original proceeding.  (Tr. 2.)

### c. Medical Opinions of Treating Source Horacio Preval, MD

On April 16, 2014, psychiatrist Horacio Preval, MD,
completed a Treating Source Statement.  (Tr. 410-416.) Dr.
Preval stated that the plaintiff had been seen weekly since
December 18, 2013 and was diagnosed with major depressive
disorder severe without psychosis.  (Tr. 410.)  He noted that
the plaintiff reported depression, mood swings, anxiety,
isolation, nervousness, fatigue, difficulty with sleep,
irritability, suicidal ideation and some agoraphobia.  (*Id.*) Dr.
Preval noted that the plaintiff was seen weekly by a therapist
and monthly by a staff psychiatrist.  (Tr. 412.)  Dr. Preval
also noted that the plaintiff had been prescribed Prozac and
Abilify and was experiencing the side effects of nightmares and
forgetfulness.  (*Id.*)  Dr. Preval opined that "Jaritza is unable
to work at this time due to depressive and anxiety symptoms.
She has difficulty managing her anger and getting along with
others.  She also experiences some agoraphobia and prefers to
stay at home."  (Tr. 414.)  Dr. Preval found that the
plaintiff's understanding and memory were limited due to
difficulty reading, writing and taking directives as well as
forgetfulness.  (Tr. 415.)  Dr. Preval found that the
plaintiff's concentration and persistence were limited with

short term memory loss and consequential thinking. (*Id.*) Dr. Pavel also found that there was no limitation with adaptation and that social interaction was limited due to difficulty getting along with others. (Tr. 414-415.)

On March 18, 2016, Dr. Horacio Preval and licensed Marriage and Family Therapist Wildilisa Moronta completed a Treating Source Opinion. (Tr. 487-501.) Dr. Preval and Ms. Moronta noted a diagnosis of bipolar disorder, depression with psychotic features, and panic disorder. (Tr. 487.) They noted that, from November 25, 2015 through March 17, 2016, the plaintiff had been seen weekly. (*Id.*) Dr. Preval and Ms. Moronta noted that the plaintiff had moderate limitations in activities of daily living, referencing the fact that she had difficulty traveling alone; that the plaintiff had moderate limitations in social functioning with a reference to her mood instability, poor frustration tolerance, and difficulty following multiple directives; that she had marked limitations in concentration, persistence and pace due to the fact that she needed constant re-direction; and that the plaintiff showed signs of deterioration or decompensation in work-like settings due to the fact that she is easily overwhelmed and suffers panic attacks. (Tr. 488-489.)

Dr. Preval and Ms. Moronta opined that the plaintiff can sustain an ordinary work routine; remember locations and

work-like procedures; perform at a consistent pace; make simple
work-related decisions; ask simple questions or request
assistance; and carry out simple instructions.  (Tr. 490-496.)
Dr. Preval and Ms. Moronta noted that the plaintiff was not able
to understand and remember very short and simple instructions;
maintain attention and concentration for extended periods;
perform activities in a schedule without having panic attacks;
maintain attendance or be punctual within customary tolerances;
work in close proximity to others; complete a normal workday or
workweek without interruption from psychologically based
symptoms; be aware of hazards; accept instruction and respond
appropriately to criticism from supervisors; get along with co-
workers without distracting them or exhibiting behavioral
extremes; interact appropriately with the public; or deal with
changes in a work setting.  (Tr. 490-496.)

### d. Medical Opinion of Consultative Examiner Christopher Flach, PhD

On April 29, 2014, the plaintiff was examined by
psychologist Christopher Flach, PhD at the request of the
Administration.  (Tr. 422-425.)  Dr. Flach noted that the
plaintiff complained of difficulty with sleep, depression,
anxiety and panic symptoms such as sweating and breathing
difficulty which "occur mostly when outside and last about ten
minutes."  (Tr. 422.) The plaintiff reported manic symptoms

7

including pressured speech, psychomotor agitation, and expansive mood. (Tr. 423.) Dr. Flach noted the plaintiff presented with anxious affect, neutral mood, and pressured speech. (*Id.*) The plaintiff had adequate social skills; a coherent thought process with no hallucinations or delusions; fair insight and good judgment. (Tr. 423-424.) The plaintiff was moderately impaired in attention, concentration, and in recent and remote memory. (Tr. 424.) Dr. Flach opined that the plaintiff's cognitive functioning was below average. (*Id.*) Dr. Flach noted that the plaintiff reported that she could bathe and dress but did not do cleaning or laundry; did not cook because of fear she would burn things; and did not take public transportation unless accompanied. (*Id.*)

Dr. Flach opined that the plaintiff can understand simple directions and perform simple tasks independently, and that she has mild to moderate problems in maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks, making appropriate decisions, relating to others, and in dealing with stress. (Tr. 423-424.) Dr. Flach opined that the plaintiff's mental impairments and learning disability would mildly to moderately interfere with her ability to function on a daily basis. (Tr. 424-425.) Dr. Flach diagnosed panic disorder and bipolar disorder without

8

psychotic features and recommended that she continue with psychiatric services.  (Tr. 425.)

### e. Medical Opinion of Ashley Dolan, PhD

On January 19, 2016, the plaintiff was examined by psychologist Ashley Dolan, PhD, at the request of the Commissioner.  (Tr. 429-436.)  The plaintiff reported that she had been in treatment off and on since 2007 but that it had not alleviated her symptoms.  (Tr. 429.)  The plaintiff reported trouble sleeping, dysphoric moods, hopelessness, fatigue, mood swings, anger and physical aggression, blackout periods, anxiety, irritability, concentration difficulty, auditory hallucinations, paranoia and suicidal thoughts.  (Tr. 430.) The plaintiff admitted to recently having thoughts of homicidal behavior.  (*Id.*)  On mental status examination the plaintiff had a flat affect, she came to the appointment wearing pajamas and had slouched posture, her eye contact was appropriate and her motor behavior was normal.  (Tr. 431.)  The plaintiff's speech was fluent but monotonous and her thought process was coherent and goal-directed.  (*Id.*)  The plaintiff's attention and concentration were mildly impaired and she was not able to do simple math or serial 3's.  (*Id.*)  The plaintiff's intellectual functioning was estimated to be below average and her recent and remote memory was mildly impaired due to both psychiatric symptoms and below average intellectual functioning.  (*Id.*)  The

9

plaintiff's insight and judgment were both fair.  (Tr. 432.)
The plaintiff stated that she only bathes and grooms herself
twice a week.  (*Id.*)  The plaintiff reported that she cleans her
room but does not cook because she leaves the stove on and does
not do laundry because she cannot use the machine.  (*Id.*)  The
plaintiff does not drive, does not shop for herself and cannot
manage her own money.  (*Id.*)  The plaintiff does not like going
out and cannot take trains but can take buses.  (*Id.*)  The
plaintiff reported that her mother helps her manage chores and
she has strained family relationships and no friends.  (*Id.*)
The plaintiff spends her days sleeping, watching television and
cleaning her room.  (*Id.*)

  Dr. Dolan opined that the plaintiff had mild
limitations in following and understanding simple directions,
performing simple tasks on her own, learning new tasks, making
appropriate decisions, and maintaining attention and
concentration.  (Tr. 432, 434.)  Dr. Dolan opined that the
plaintiff would have moderate limitations in maintaining a
regular schedule, performing complex tasks on her own,
interacting adequately with others, and dealing with stress
appropriately.  (Tr. 432, 434-435.)  Dr. Dolan diagnosed the
plaintiff with bipolar disorder I and generalized anxiety
disorder.  (Tr. 432.)  Dr. Dolan opined that the examination was
consistent with psychiatric problems but that those problems did

not appear to be significant enough to interfere with the claimant's ability to function on a daily basis.  (*Id.*)

### f. Medical Opinion of Dr. John Fkiaras, MD

On January 19, 2016, plaintiff was physically examined by Dr. John Fkiaras.  (Tr. 438-442.)  Dr. Fkiaras noted that plaintiff was in no acute distress; had no physical impairments; was obese; and had full range of motion in shoulders, elbows, forearms and wrists.  (Tr. 440-441.)  Dr. Fkiaras found plaintiff's cervical and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  (Tr. 441.)  Dr. Fkiaras noted no abnormality in plaintiff's thoracic spine.  (*Id.*)  Dr. Fkiaras diagnosed plaintiff with low back pain; bilateral knee pain; bilateral calf pain; obesity; hypertension; and a history of gastric bypass surgery.  (*Id.*)

Dr. Fkiaras opined that plaintiff could continuously lift or carry up to 50 pounds, and could occasionally lift or carry 51 to 100 pounds.  (Tr. 443.)  Dr. Fkiaras found that plaintiff could sit or stand for the entirety of an eight-hour workday.  (Tr. 444.)  Dr. Fkiaras opined that plaintiff could continuously climb stairs and ramps; climb ladders or scaffolds; balance; stoop; kneel; crouch; and crawl.  (Tr. 446.)  Dr. Fkiaras found that plaintiff had no environmental limitations and could perform activities normally.  (Tr. 447-448.)

### g. Medical Opinion of State Agency Psychiatric Consultant N. Shliselberg, MD

On June 3, 2014, state agency psychiatric N. Shliselberg, a psychiatrist by designation, reviewed the plaintiff's file. (Tr. 272-276.) Dr. Shliselberg opined that the claimant had no restriction of activities of daily living; mild limitation in maintaining social functioning; mild limitation in maintaining concentration, persistence and pace; and no episodes of decompensation. (Tr. 272.) Dr. Shliselberg opined that the plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were substantiated by the medical evidence. (Tr. 273.) Dr. Shlisleberg opined that the plaintiff was not significantly limited in remembering locations and work-like procedures; carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; coordinating in proximity with others without being distracted by them; making simple work-related decisions; interacting with the general public; asking simple questions or asking for assistance; maintaining socially appropriate behavior; and setting realistic goals or making plans independently of others. (Tr. 273-275.) Dr. Shliselberg opined that the plaintiff would have moderate limitations in plaintiff's ability to remember detailed instructions; maintain attention and concentration for extended

12

periods; perform activities within a schedule, maintain regular

attendance and be punctual within customary tolerances; complete

a normal workweek without interruption from psychological

symptoms; work at a consistent pace without an unreasonable

number and length of rest periods; accept instruction and

respond appropriately to workplace changes; and travel in

unfamiliar places or by public transportation.  (Tr. 274-275.)

Dr. Shliselberg opined that the plaintiff was markedly limited

in her ability to carry out detailed instructions.  (Tr. 274.)

Dr. Shliselberg opined that "after considering the totality of

the evidence, cl[aimant] is able to remember, understand and

carry out simple tasks.  (Tr. 275.)

## II.    DISCUSSION

### a. Standard of Review

Unsuccessful claimants for disability benefits under

the Act may bring an action in federal district court seeking

judicial review of the Commissioner's denial of their benefits

"within sixty days after the mailing . . . of notice of such

decision or within such further time as the Commissioner of

Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3). A

district court, reviewing the final determination of the

Commissioner, must determine whether the correct legal standards

were applied and whether substantial evidence supports the

decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.
1998).

A district court may set aside the Commissioner's
decision only if the factual findings are not supported by
substantial evidence or if the decision is based on legal error.
*Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008).
"Substantial evidence is 'more than a mere scintilla," and must
be relevant evidence that a reasonable mind would accept as
adequate to support a conclusion.  *Halloran v. Barnhart*, 362
F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420
U.S. 389, 401 (1971)).  If there is substantial evidence in the
record to support the Commissioner's factual findings, those
findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into
legal error "requires the court to ask whether 'the claimant has
had a full hearing under the . . . regulations and in accordance
with the beneficent purposes of the [Social Security] Act.'"
*Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

The reviewing court does not have the authority to
conduct a *de novo* review, and may not substitute its own
judgment for that of the ALJ, even when it might have
justifiably reached a different result.  *Cage v. Comm'r*, 692
F.3d 118, 122 (2d Cir. 2012).

14

### b. **The Commissioner's Five-Step Analysis of Disability Claims**

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131-32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used

15

to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted)); *see also* 20 C.F.R. § 404.1520(a)(4). At any of the previously mentioned steps, if the answer is "no," then the analysis stops and the ALJ must find claimant not disabled under the Act. *Id.*

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523(c). Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process. 20 C.F.R. § 416.945(a)(2).

In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128. In step five, the

16

burden shifts from the claimant to the Commissioner, requiring

that the Commissioner show that, in light of the claimant's RFC,

age, education, and work experience, the claimant is "able to

engage in gainful employment within the national economy."

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

### c. The ALJ's Disability Determination

Using the five-step sequential process to determine

whether a claimant is disabled as mandated by 20 C.F.R. §

416.971, the ALJ determined at step one that the plaintiff had

not engaged in substantial gainful activity since the

application date of January 17, 2014.  (Tr. 21.)

At step two, the ALJ found that the plaintiff suffered

from the severe impairments of major depressive disorder,

bipolar disorder and a history of a learning disability. (*Id.*)

The ALJ considered the plaintiff's conditions of obesity but

found them to be nonsevere.  (*Id.*)

At step three, the ALJ determined that from January

17, 2014, through the date of the hearing, the plaintiff did not

have an impairment or combination that meets or medically equals

one of the listed impairments in Appendix 1 of the regulations,

20 C.F.R. § 404.1520, Appendix 1 (20 C.F.R. §§ 416.920(d) and

416.926), although the ALJ considered Listing 12.04.  (Tr. 21.)

The ALJ found that from January 17, 2014 through the date of the

hearing, the plaintiff would be capable of performing work at

17

all exertional levels but with following non-exertional limitations: the claimant can perform full range of unskilled work requiring only basic math skills, with no close interpersonal contact with the general public, that does not require high volume assembly line production quotas. (Tr. 23.) In arriving at this RFC the ALJ stated that he gave "limited weight" to the opinion of Dr. N. Shliselberg; gave "limited weight" to the opinion of Dr. Horacio Preval; gave "partial weight" to the opinion of Dr. Flach; gave substantial weight to the opinion of Dr. John Fkiaras; gave partial weight to the opinion of Dr. Dolan; and gave "partial weight" to the joint opinions of Dr. Preval and Ms. Moronta.  (Tr. 24-26.) At step four, the ALJ concluded that plaintiff had no past relevant work.  (Tr. 26.)

    At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy from January 17, 2014, through the date of the hearing as a cleaner transportation equipment, DOT 919.687-018; garment bagger, DOT 920.687-018; and as a garment folder, DOT 789.687-066. (Tr. 27.)

    Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. § 416.920(g).  (Tr. 28.)

## III.   Analysis

The plaintiff argues that the Appeals Council erred in failing to consider the new evidence which was presented; that the ALJ failed to develop the record; that the ALJ erred in weighing the medical evidence and that the ALJ's determination is not supported by substantial evidence.   The court agrees with the plaintiff that the ALJ failed to develop the record and finds that the ALJ was not properly able to weigh the medical opinions of Dr. Preval and Ms. Moronta on the basis of an incomplete medical record.   Accordingly, the court remands.

### a. The ALJ Failed to Subpoena and Consider the Medical Records of NYPCC

The ALJ noted in his decision that he had denied the request from plaintiff's representative that he subpoena the treatment records from NYPCC and stated that plaintiff's representative "had ample time to request the records" and that "such requests need to be made more than five days prior to the hearing". (Tr. 23.)  The court finds that the ALJ misapplied the law in both regards.

According to the SSA regulations, the Commissioner must "make every reasonable effort" to assist the claimant in developing a "complete medical history." 20 C.F.R. § 404.1512(b).  The ALJ failed to comply.  Furthermore, "[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial,

must [her]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. This duty ... exists even when, as here, the claimant is represented by counsel." *Pratts v. Chater*, 94 F.3d 34, 38 (2d Cir. 1996) (internal citations and quotations omitted).

Thus, if the claimant's medical record is inadequate, it is "the ALJ's duty to seek additional information from the [treating physician] *sua sponte." Schaal,* 134 F.3d at 505; *see Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999) ("[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record").

Newer regulations do provide, however, that it is the duty of the plaintiff to advise the SSA of outstanding treatment sources in a timely manner. The regulations provide that the plaintiff must submit information or evidence to the ALJ "no later than 5 business days before the date of the scheduled hearing" before the ALJ. 20 C.F.R. § 416.1435(a). Courts traditionally have recognized that the ALJ has an affirmative duty to develop a complete medical record. *Ventura v. Colvin*, 2016 WL 5462822, at *6 (N.D.N.Y. Sept. 29, 2016). In adopting the five-day rule, the Social Security Administration specifically sought to "appropriately balance the twin concerns of fairness and efficiency." Ensuring Program Uniformity at the

20

Hearing and Appeals Council Levels of the Administrative Review Process, 81 FR 90987, 90990, 2016 WL 7242991 (Dec. 16, 2016). The Social Security Administration also specifically addressed concerns that the rule would be inconsistent with the general understanding that an ALJ's decision should be based on all available evidence by noting that this rule would "ensure claimants have the benefit of a fully developed record at the time our ALJs conduct their hearings." *Id.* The Social Security Administration, therefore, clearly considered this issue in implementing the 5-day rule.

Courts have held that the plaintiff or the representative's obligation to provide medical evidence has been met if the ALJ is advised of the outstanding records more than five days before the hearing. *Arthur L. v. Berryhill*, 518CV304FJSDJS, 2019 WL 4395421 (N.D.N.Y. June 6, 2019) at *4. A plaintiff is not required to obtain records but only to notify the ALJ of their existence. *Drogo v. Commr. of Soc. Sec.*, 6:18-CV-6105, 2019 WL 2569599 at *3 (W.D.N.Y. June 21, 2019). The claimant "must make every effort to ensure that the ALJ receives all of the evidence." *Id.* at 4. As mentioned above, the claimant can do that by informing the ALJ about or submitting the evidence to the ALJ "no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 416.1435(a). If the claimant so notifies the ALJ about the records, then the

ALJ cannot decline to "obtain" them. *Drogo 2019 WL 2569599 at 4.* Thus, as a matter of regulatory construction, the Commissioner's argument fails. *Id.*

There is little doubt in this matter that the medical record was undeveloped. The ALJ himself noted that the medical record "seems to be rather sparse". (Tr. 251.) The plaintiff's representative repeatedly advised the ALJ of efforts to obtain the records. The representative subsequently obtained over two hundred pages of relevant and detailed treatment notes from the psychiatric facility that treated the plaintiff but, based on delays by the facility, did not receive the records prior to the issuance of the decision. (Tr. 33-234.)

The court finds that the ALJ's reasoning that the request to subpoena was untimely is an erroneous application of the 5-day rule. The court finds that the plaintiff gave adequate and repeated notice of outstanding medical evidence to the ALJ, first when she filed her notice of recent medical treatment 8 days prior to the hearing, and thereafter. The court further finds that the plaintiff's notice and requests were both reasonable and timely, and that the plaintiff's actions fell within a specific exception to the rule. That rule allows for the late submission of medical evidence if the records were not timely obtained as a result of circumstances outside of the plaintiff's control and despite due diligence on

22

the plaintiff's part.  20 C.F.R. § 404.935(b).  Through no fault

of the plaintiff, the facility did not timely provide the

records in response to her repeated requests, and the plaintiff

so advised the ALJ by seeking extensions to submit her records,

and requesting that the ALJ subpoena the records.

Title 20 C.F.R. § 416.1450 provides:

(d) *Subpoenas.* (1) When it is reasonably necessary for
the full presentation of a case, an administrative law
judge or a member of the Appeals Council may, on his or
her own initiative or at the request of a party, issue
subpoenas for the appearance and testimony of witnesses
and  for  the  production  of  books,  records,
correspondence, papers, or other documents that are
material to an issue at the hearing.
        (2) Parties to a hearing who wish to subpoena
documents or witnesses must file a written request for
the issuance of a subpoena with the administrative law
judge or at one of our offices at least 10 business days
before the hearing date, unless you show that your
circumstances  meet  the  conditions  described  in
§416.1435(b).

Here the plaintiff did not request the subpoena 10

days prior to the date of the hearing, thus the request must be

reviewed pursuant to the language of 20 C.F.R. § 416.1435(b).

Section 1435 states: "When you submit your request for hearing,

you should also submit information or evidence as required by §

416.912 or any summary of the evidence to the administrative law

judge. Each party must make every effort to ensure that the

administrative law judge receives all of the evidence and must

inform us about or submit any written evidence, as required in §

416.912, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence unless the circumstances described in paragraph (b) of this section apply."[1]  20 C.F.R. § 1435(a).

Section 416.1435(b) provides:

"If you have evidence required under § 416.912 but you have missed the deadline described in paragraph (a) of this section, the administrative law judge will accept the evidence if he or she has not yet issued a decision and you did not inform us about or submit the evidence before the deadline because:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

(i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

---

[1] It appears that the ALJ was referencing 20 C.F.R. 416.1435 when stating that the request had to be made within 5 days of the hearing.

(ii) There was a death or serious illness in your immediate family;

(iii) Important records were destroyed or damaged by fire or other accidental cause; or

(iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing."

Reviewing the facts in this case, the plaintiff satisfies the requirements of Section 416.1435(b)(3). The record is clear that the plaintiff completed a form eight days prior to the hearing, which identified the outstanding records, and that moreover, NYPCC was not unknown to the ALJ even prior to the submission of that form. (Tr. 388.)

The plaintiff's representative made diligent and repeated requests for the records and advised the ALJ that they had not been received, asked the ALJ twice for more time to submit the records, and ultimately requested that the ALJ subpoena the records when the facility failed to send them. (Tr. 400-401.) Based upon these facts, the court finds that the plaintiff's representative acted with due diligence. Moreover, the issue was not that the representative failed to request the records in a timely manner, but the fact that, despite timely requests, the records were not sent, which, pursuant to

25

416.1435(b)(3), was an unavoidable circumstance beyond the plaintiff's control.

At no point in its brief or reply brief does the Commissioner argue that the plaintiff or her attorney failed to act with due diligence in obtaining the records. (See gen. Def. Mem. ECF 16, 19.) Had the representative not requested the records and not followed up on the request, the facts might not support a finding that the ALJ acted improperly, but on these facts it was error for the ALJ not to assist the plaintiff and her representative in developing the record.

Accordingly, the court remands the case with the direction that the additional records be considered.

### b. The ALJ failed to properly weigh the medical evidence

The plaintiff argues that the ALJ has failed to properly weigh the medical opinion evidence. The court declines to address the weight of each opinion as the court finds the opinions of Dr. Preval and Ms. Moronta could not be properly weighed without the two hundred plus pages of treatment notes that supported their findings.

This court has held that it is error for an ALJ to make a determination as to the weight of a medical opinion when it has failed to develop the record to obtain the underlying treatment records. "Needless to say, the ALJ cannot assess the

amount of medical evidence supporting a treating physician's opinion on an incomplete record." *Tirrell v. Berryhill*, No. 15-CV-518 (KAM), 2018 U.S. Dist. LEXIS 74049 (E.D.N.Y. May 1, 2018). "The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000). Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Burgess,* 537 F.3d at 129 (quoting *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999)). "[W]here ... an ALJ concludes that the opinions or reports rendered by a claimant's treating physicians lack objective clinical findings, she may not reject the opinion as unsupported by objective medical evidence without taking affirmative steps to develop the record in this regard." *Rivas v. Barnhart,* No. 01 Civ. 3672 (RWS), 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005). Moreover, "[a]n ALJ's affirmative obligation to develop the record also includes the obligation to contact a claimant's treating physicians and obtain their opinions regarding the claimant's residual functional capacity." *Tirado v. Astrue,* No. 10-CV-2482 (ARR), 2012 WL 259914, at *4 (E.D.N.Y. Jan. 25, 2012) (citing *LoRusso v. Astrue*, No. 08-CV-3467 (RJD), 2010 WL 1292300, at *7 (E.D.N.Y. March 31, 2010)).

Here the ALJ has clearly erred in according limited weight to Dr. Preval's and Ms. Moronta's opinions. The medical records later obtained showed a long and lengthy treatment history with Ms. Moronta, in particular. Ms. Moronta's opinions could not be properly weighed without the benefit of the supporting records. Similarly, the opinions of Dr. Preval could not be properly weighed without considering the underlying treatment notes of the colleagues in his office, which supported his findings, and which appeared to have factored into his opinions.

Because the court remands on this additional basis, the court declines to address the plaintiff's remaining arguments as to the weight assigned to each medical opinion. On remand, the ALJ will be required to consider the record as a whole and the consistency of Dr. Preval's and Ms. Moronta's opinions with those of other sources. The weight the ALJ has assigned to other medical opinions may change in light of the complete record.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa*, 168 F.3d at 82-83 (quoting *Pratts*, 94 F.3d at 39) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits.  *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980).

The court finds that the ALJ did not consider a complete record and did not apply the law appropriately. Accordingly, this case is remanded for further proceedings consistent with this decision.

**SO ORDERED.**

Dated:    Brooklyn, New York
          February 19, 2020

s/ Kiyo A. Matsumoto

Hon. Kiyo A. Matsumoto
United States District Judge